RHODE *v.* METROPOLITAN LIFE-INSURANCE CO.

1. LIFE INSURANCE—ACTION ON POLICY—PHYSICAL CONDITION OF INSURED—EVIDENCE—REPORT OF EXAMINING PHYSICIAN.
    In an action on a life-insurance policy, defended on the ground that the insured was not in sound health when the application was made and the policy delivered, the report of the company's examining physician, on which the policy was issued, is admissible in evidence to rebut such contention.

2. SAME—QUESTION FOR JURY.
    Where, in an action on a life-insurance policy, the proofs were strong that insured was afflicted with pulmonary consumption when he received the policy, but the report of the company's examining physician, accompanying the application for insurance, was to the effect that insured's lungs were healthy, and that, in the examiner's opinion, he was in good health, there was such a conflict in the testimony as to warrant the submission of the question of insured's physical condition to the jury.

3. SAME—ATTENDANCE OF PHYSICIAN.
    In an action on a life-insurance policy, statements by the insured tending to show that he had been treated by a physician within two years, contrary to the representation in his application, are competent evidence.

4. SAME—SEVERITY OF ILLNESS—BURDEN OF PROOF. .

A breach of warranty in a life-insurance policy, that the insured had not been under the care of a physician within two years, is shown *prima facie* by proof that he had been attended by a physician within that period; and, if it be the fact that such attendance was for a mere temporary indisposition, not within the contemplation of the policy, it devolves on the plaintiff to prove it.

5. SAME—PRIOR APPLICATION—NOTICE.

A life-insurance company on a second application for insurance, the first having been postponed, is not bound to take notice of what was contained in the prior application.

Error to Wayne; Brooke, J. Submitted October 10, 1901. Decided December 21, 1901.

*Assumpsit* by Minnie Rhode against the Metropolitan Life-Insurance Company on a policy of insurance. From a judgment for plaintiff, defendant brings error. Reversed.

*Haug & Yerkes*, for appellant.

*Bowen, Douglas & Whiting*, for appellee.

MONTGOMERY, C. J. This is an action on a policy of insurance issued on the life of Michael Rhode. Plaintiff recovered, and defendant brings error. It appears that on November 19, 1899, the application for insurance, in the sum of $500, was made by deceased. A policy was issued on this application, bearing date December 7, 1899, On March 8, 1900, the insured died from *tuberculosis pulmonalis*. The plaintiff furnished proofs of death, and, upon the defendant's refusing payment, instituted this suit.

It is contended by the defendant on this appeal that the evidence conclusively shows that the insured was not in sound health at the time when the application was made, and at the time when the policy was issued; that the insured misrepresented the facts in his application relative to prior attendance and treatment by physicians; that the

court erred in striking out testimony bearing upon this subject. The other questions presented are subsidiary and dependent.

The policy of insurance contained a provision as follows:

"No obligation is assumed by the company until the first premium has been paid, nor prior to this date, nor unless upon this date the insured is alive and in sound health."

And the application contained a clause as follows:

"I further agree that the company shall incur no liability under this application until it has been received, approved, and the policy issued thereon by the company at its home office in New York, and the premium has actually been paid to and accepted by the company during my lifetime, and while I am in good health."

The proofs tending to show that the deceased was afflicted with pulmonary consumption at the time of the receipt of this policy are certainly very strong, and, if the question were to be determined by us as a question of fact, there would be little room for discussion. But, as we view the case, the question of whether there was a conflict in testimony upon this subject must be determined by the answer to another question, which is raised by defendant's counsel, which is whether or not the statement of the examining physician, made at the time of the examination, November 19, 1899, in which he states the condition in which he found the lungs of the insured, and his opinion as to his condition of good health, is admissible in evidence as against the defendant. It does not appear that this question has ever been presented to this court in just this form. But we have no doubt, on principle, that such testimony is competent evidence against the defendant. The physician is a representative of the insurance company. He is employed for the very purpose of determining the physical condition of the applicant. His examination is supposed to be made with the utmost care, and with due regard to the interests of his employer. We can conceive of no reason why his statements, made at the time, should

not be received as competent evidence.   The only case to which our attention is directed which bears upon the question affirms the admissibility of such testimony.   *Holloman* v. *Insurance Co.*, 1 Woods, 674 (Fed. Cas. No. 6,623).   See, also, 1 Joyce, Ins. § 412.   We do not mean to intimate that such testimony is conclusive, but that it is receivable, as bearing upon the question of the condition of health of the applicant at the time the examination was made, we think is clear.   It cannot be said, therefore, that there is no conflict of testimony upon the question of decedent's physical condition, and it follows that it was not error in the circuit judge to submit that question, and the force of that testimony, to the jury.

The application contained the statement of the insured that he had not been under the care of a physician within two years.   The testimony shows, without dispute, that he was attended by at least one physician within the period named, and, on the trial, Dr. Kestell, who testified that he attended upon the deceased on November 10, 1899, testified that deceased told him that he had been previously treated by Dr. Shurly.   On motion of the plaintiff, this testimony was stricken out.   We think there was error in this ruling.   It is said that the previous question and answer, namely, as to whether he had been attended by a physician, was not stricken from the record.   But the record shows the following:

" *Q.* Do you know whether or not Rhode had been treated by any other physician before he came to your house ?
" *A.* He said he was.
" *Q.* Who did he say treated him ?
" *A.* Dr. Shurly.
" *Mr. Murfin:* I object to that, your honor.
" *The Court:* I think that may be stricken out."

We think it can hardly be doubted that the jury must have understood that the testimony upon this whole subject was withdrawn from their consideration.

But it is said that there was nothing in the question to

indicate whether or not the answer would show a breach
of the warranty; that, while the answer that he was
treated by a physician was probably material as far as it
went, it should be shown for what he was treated, in order
to show whether it constituted a breach of the warranty.
Counsel cite *Hann* v. *National Union*, 97 Mich. 513 (56
N. W. 834, 37 Am. St. Rep. 365), and *Plumb* v. *Insurance
Co.*, 108 Mich. 94 (65 N. W. 611), in this connection.
These cases hold that merely calling upon a physician for
some temporary indisposition, which does not tend to
weaken or undermine the constitution of the insured,
would be no breach of the warranty.  But, in each of these
cases, the plaintiff offered affirmative testimony to show
that the treatment of the physician was for some temporary
indisposition.  Neither of the cases held that it is not
sufficient, *prima facie*, to show a breach of a warranty
such as that involved in this case, to prove that the insured
had in fact been attended by a physician.  Indeed, to so
hold would be doing violence to the very terms of the
stipulation; and, when the defendant in this case was pre-
pared to show that the deceased had, within two years
prior to the making of this application, been attended by
one or more physicians, this was *prima facie* a breach of
his contract, and the burden would be upon the plaintiff to
show that the attendance was not for any ailment which
tended to weaken or undermine his health seriously.

It appears to have been suggested in the court below that,
inasmuch as some of these facts appeared in the records of
the company, in a previous application for insurance, which
had been postponed, the company must be bound to take
notice of what was contained in such prior application.
But this position is negatived by the holding of the court
in *Brown* v. *Insurance Co.*, 65 Mich. 306 (32 N. W. 610,
8 Am. St. Rep. 894).

For the error pointed out, the judgment will be reversed,
and a new trial ordered.

MOORE and LONG, JJ., concurred with MONTGOMERY,
C. J.  HOOKER, J., concurred in the result.  GRANT, J.,
did not sit.