Donna FRYE, Appellant,

v.

MERAMEC MARINA, INC., et al., Respondent.

No. 47147.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 9, 1984.

Motion For Rehearing and/or Transfer to
Supreme Court Denied
July 12, 1984.

Kenneth J. Heinz, St. Louis, for appellant.

Daniel T. Rabbitt, St. Louis, for respondent Geen.

Jerome Wallach, St. Louis, for respondent Meramec.

REINHARD, Judge.

Plaintiff appeals after a jury verdict in favor of defendants on her claim for personal injuries suffered in a fire aboard a boat. We find no merit to her lone point on appeal and affirm the judgment.

On August 31, 1979, Donna Evans, Marcia O'Shea, and Bill Burchett went with Michael Frye to the Meramec Marina (Meramec) to look at a boat owned by Oliver Geen. Geen had previously consigned the boat to Meramec for sale. John Bailey, part owner of Meramec, agreed to take the group for a test ride on the boat. He moved the boat to the gas dock, took off the gas cap in the front of the boat and pumped in two to four gallons of fuel. After everyone boarded, he started the engine. The craft went about fifteen feet and then the engine died. At that point, the smell of gas became strong and it was soon discovered that the boat deck was covered with gas. Bailey immediately said, "don't anyone light anything." He then opened two doors in the front of the boat and discovered there was no gas tank beneath the gas cap allowing the gas he had pumped in to spill out onto the deck. Oliver Geen, owner of the boat, testified that the boat's gas tank was in the rear of the boat and that he forgot to advise Meramec when he consigned it to them for sale, that there was no gas tank beneath the gas cap in the front of the boat.

Bailey scooped water out of the river and washed the gas off the deck for approximately twenty to thirty minutes. He then started the boat, revved the engine and an explosion and fire resulted.

According to Bailey, immediately before the fire, he heard someone say "Don't do that." He then looked up and saw Mike Frye bent over slightly with his hands near his face. He then saw a flash and saw a pack of cigarettes drop to the floor. Frye denied that he tried to light a cigarette. None of the other witnesses saw him light one.

The evidence also established that Mike Frye took a six pack of beer aboard the boat from which he had one or two beers. According to Donna Frye, to her knowledge up to that time, he had not had any alcohol. Bailey testified that Frye was "under the influence" but not drunk when he boarded the boat, although his speech was slurred and he was having problems walking.

Mike Frye received severe burns from the explosion and fire while Donna Evans and Marcia O'Shea received lesser injuries, principally to their feet and legs. Donna Evans, Marcia O'Shea and Mike Frye filed suit against Meramec, Bailey and Oliver Geen. Donna Evans and Mike Frye married after the accident, but before trial. A separate trial was ordered for Mike Frye's claim for personal injuries.

Plaintiffs called an expert witness who testified that the fire was a result of either a spark from the bilge pump motor, bilge blower, a backfire from the carburetor, or from the battery igniting the gas fumes. He did not think it was possible that the lighting of a cigarette ignited the fire. Defendants' expert witness testified that the ignition of the fire was caused by the lighting of a cigarette. The jury returned a verdict in favor of all defendants.

Only Donna Frye has appealed. She contends the trial court erred in admitting evidence that Michael Frye drank excessively and that a week after the accident he was suffering from alcohol withdrawal.

Prior to trial, plaintiffs filed a motion *in limine* requesting that defendants be prohibited from presenting evidence that Mike Frye's girlfriend told the hospital that he "drank a case of beer a day and ... some hard liquor" and that Frye was suffering

from "withdrawal from alcohol" (D.T.'s) in the hospital after the accident because it does not "relate to his intoxication or lack of it at the time this incident occurred...." The trial court overruled the objection because "[t]hat might be germane to the issues."

On cross-examination of Donna Frye by defense counsel representing Meramec Marina, she admitted telling someone at the hospital that Mike drank. However, she denied saying that he drank a case of beer and a fifth of hard liquor a day. On cross-examination by defense counsel representing Oliver Geen, she admitted that if the hospital said they talked to his girlfriend that was her. She was then asked if she didn't "tell the hospital, St. John's Hospital, that he drank a case of beer and a bottle of hard liquor a day." She denied making the statement. At this point, there had been no objection to any question or a motion to strike. She was then asked "[d]o you deny making this statement to the hospital? 'The patient informed us of the past history of alcohol _____.' " Plaintiffs' counsel then objected for the first time. The trial court overruled the objection. Defense counsel again asked the witness if she told the hospital that Michael drank one case of beer per day and hard liquor, starting in the morning. She denied making the statement. On recross-examination, she was asked whether "Michael got the D.T.'s in the hospital because he didn't have anything to drink in the hospital, ....?" She replied she did not know. No objection was made.

At the close of plaintiffs' case, plaintiffs' attorney read into evidence Mike Frye's hospital discharge record as follows:

"On the eighth post-burn day, the patient began having visual and auditory hallucinations, becoming agitated over being in the hospital, and his business and having delusions of grandeur, concerning the Mafia. The patient's girlfriend at this time, informed us of his past history of alcohol equaling one case of beer per day, and hard liquor, starting in the morning.

Doctor Kuhn was consulted and it was his impression that this could be delirium tremons, [sic] with acute paranoid reaction. He started him on Haldol, 2 milligrams, QID, and Cogentin. The patient's abdominal complaints disappeared as his mood was calmed and he began tolerating mild [sic] without difficulty. Doctor Kuhn felt this was a delirium, most likely due to burn, since it was probably too late for DTs."

In defendants' case, defendants presented the deposition testimony, over plaintiffs' objection, of Dr. William W. Monafo who treated Mike Frye at St. John's Hospital. Dr. Monafo stated that Frye suffered from hallucinations and delirium tremens which was caused by alcohol withdrawal and was not burn-related.

■ We agree with plaintiff that the evidence referred to in the motion *in limine* was inadmissible. The most recent pronouncement by the Missouri Supreme Court on this issue is *Rhineberger v. Thompson,* 202 S.W.2d 64 (Mo.banc 1947). There, the plaintiff, injured in a collision with a train, had been observed leaving a tavern shortly before the accident. Plaintiff was extensively cross-examined as to the number of drinks he had ingested. The trial court sustained plaintiff's objection to a question as to plaintiff's general reputation for sobriety. The Supreme Court noted that evidence that plaintiff was intoxicated at the time of the collision was material to the issues in the case, but held that the trial court did not err in sustaining the objection "because the character of plaintiff for temperance was not an issue, and, in our opinion, the plaintiff's general reputation for sobriety was inadmissible upon the issue of plaintiff's intoxication at the time of the collision." 202 S.W.2d at 71. *See* 46 A.L.R.2d 103.

■ Even though the evidence referred to in plaintiffs' motion *in limine* was inadmissible, that does not constitute grounds for reversal in the circumstances of this case. Plaintiff failed to object to the cross-examination concerning Mike's consumption of a case of beer a day until it was

broached for the third time. This was too late to preserve the matter for appellate review. Plaintiff must timely object at the first opportunity. *Brown v. Thomas*, 316 S.W.2d 234, 237 (Mo.App.1958). *See Wehrman v. Liberty Petroleum Co. Inc.*, 382 S.W.2d 56, 65 (Mo.App.1964). Though plaintiff filed a motion *in limine* raising this matter, that did not relieve her of objecting at trial. It is well settled that a ruling on a motion *in limine* is merely a preliminary expression of the court's opinion as to the admissibility of evidence. *Annin v. Bi-State Development Agency*, 657 S.W.2d 382, 385 (Mo.App.1983); *State ex rel. Westfall v. Gerhard*, 642 S.W.2d 679, 681 (Mo.App.1982). A party still has the burden of interposing a specific objection during the trial to preserve the point for appellate review. *Peters v. Henshaw*, 640 S.W.2d 197, 201 (Mo.App.1982); *State v. Foster*, 608 S.W.2d 476, 478 (Mo.App.1980).

■ Plaintiff cannot complain of the evidence of Frye's habit of heavy drinking contained in his hospital discharge record being placed before the jury because it was done by her own counsel.

■ We next consider Dr. Monafo's deposition testimony. It was clearly rebuttal testimony on a collateral matter. Ordinarily, such evidence is inadmissible upon proper objection. However, plaintiff, by reading from Frye's discharge record presented medical evidence that he was not suffering from D.T.'s after the accident in question. Once the evidence of this collateral matter was read into the record by the plaintiff, whether the trial court permitted defendants to rebut it with like evidence rests in the sound discretion of the trial court. *Dorn v. St. Louis Public Service Co.*, 250 S.W.2d 859, 866 (Mo.App.1952). *See Watson v. Landvatter*, 517 S.W.2d 117 (Mo.banc 1974); *Kelley v. Hudson*, 407 S.W.2d 553, 556 (Mo.App.1966). We find no abuse of discretion in these circumstances. Moreover, even if it were error, there was little prejudice to plaintiff because of the evidence of Frye's habit of heavy drinking already in the record.

Affirmed.

KAROHL, P.J., and CRANDALL, J., concur.